# EXHIBIT A

## IN THE CIRCUIT COURT OF LEWIS COUNTY, WEST VIRGINIA

**RICKEY SIMPSON,**

    **Plaintiff,**

**v.**                                                    Civil Action No. _19-C-13_

**OCWEN LOAN SERVICING, LLC;**
**WELLS FARGO BANK, NATIONAL ASSOCIATION,**
**AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2005-2**
**ASSET-BACKED CERTIFICATES 2005-2,**

    **Defendants.**

**SERVE:**
**Ocwen Loan Servicing, LLC**
**1661 Worthington Road, Ste 100**
**West Palm Beach, FL 33409**

### SUMMONS

To:  The Above-Named Defendant:

**IN THE NAME OF THE STATE OF WEST VIRGINIA,**

    You are hereby summoned and required to serve upon **Jennifer S. Wagner/Mountain State Justice, Inc., whose address 325 Willey Street, Morgantown, West Virginia, 26505,** an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

    You are required to serve your answer to the Complaint within **thirty (30)** days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

**BETH A. BURKHART**

Clerk of Court

Date: _March 15, 2019_

**IN THE CIRCUIT COURT OF LEWIS COUNTY, WEST VIRGINIA**

LEWIS COUNTY, WV
FILED

**RICKEY SIMPSON,**

2019 MAR 15  A 9: 05

 **Plaintiff,**

CIRCUIT CLERK

v.            Civil Action No. __19 C -13__

**OCWEN LOAN SERVICING, LLC;**
**WELLS FARGO BANK, NATIONAL ASSOCIATION,**
**AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2005-2,**
**ASSET-BACKED CERTIFICATES 2005-2,**

 **Defendants.**

## COMPLAINT

  This case arises from abusive loan servicing by Defendants. Throughout the servicing of Plaintiff's loan, Defendants regularly misstated the status of the account, misrepresented that it was permitted to return Plaintiff's payments and instructed Plaintiff not to make payments, and otherwise interfered with Plaintiff's performance on the loan. Plaintiff is a single, disabled, father living with and caring for his severally disabled child and six other family members in his home, and solely seeks to retain his home and obtain relief from Defendant's abusive practices.

## PARTIES

  1.  Plaintiff Rickey Simpson lives in his family home located at 564 Walkersville River Rd., Walkersville, WV with his severely disabled son and six other family members. Mr. Simpson and his family have lived at the home for over twenty years.

  2.  Defendant Ocwen Loan Servicing, LLC, (Ocwen) claims to be the servicer of the subject loan and has a primary place of business at 1661 Worthington Road, Ste 100 West Palm Beach, Fl, 33409.

  3.  Defendant Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2005-2, Asset-Backed Certificates 2005-2, claims to be the trustee for the

1

holder of the subject loan. According to Ocwen Loan Servicing, this entity's address is 9062 Old Annapolis Road MAC: N2702-011, Columbia, MD 21045. According to other sources, the proper address for Wells Fargo Bank, National Association, is 101 North Phillips Avenue, Sioux Falls, SD United States 57104.

## FACTS

4.　On or around March 1, 2005, Mr. Simpson was placed into a highly predatory exploding adjustable rate mortgage by H&R Block Mortgage Corporation in the amount of $108,000.00.

### Improper Assignments

5.　On or around that same date, the same individual signed various allonges purportedly as an employee of both H&R Block Mortgage Corporation and Option One Mortgage Corporation.

6.　Thereafter on May 1, 2005, the loan was purportedly securitized into a trust by Option One Mortgage Corporation and Defendant Wells Fargo Bank, NA.

7.　Upon information and belief, no assignments have been recorded of the deed of trust that assigned it to any party other than the original lender.

8.　Defendant Ocwen does not have authority to service the Note, because it does not have in its possession proper chain of title transferring the loan from H&R Block to Option One Mortgage Corporation and/or from Option One to any subsequent holder.

9.　Defendant Ocwen has stated, by way of correspondence dated June 28, 2018, that it acquired the servicing rights for the loan from Homeward Residential on February 15, 2013. It did not set forth under what authority it claimed to be able to service the note or how it knows of the actual identity of the purported holder.

2

10.     Defendants do not have any right to collect on the note or deed of trust.

### Illegal Balloon

11.     Defendant Ocwen asserts that it acquired the servicing of the loan on or around February 15, 2013, and that at that time the unpaid principal balance of the loan had increased to $113,972.11, due to loan modifications.

12.     After Ocwen began servicing the loan, Mr. Simpson retired to care for his son, who had become severely disabled.

13.     In or around February 23, 2017, the mortgage was again modified, again increasing the unpaid principal balance, but decreasing the payment by adding a balloon due on maturity.

14.     The balloon payment was not disclosed consistent with West Virginia law, and the loan modification documents are confusing and misleading regarding the amounts that would be due at maturity of the loan.

15.     The total amount owed on the loan far exceeds the market value of the home, such that Plaintiff cannot refinance or sell the property.

16.     Defendant thereafter issued a cancellation of debt tax form dated February 17, 2017, stating that $25,480.07 had been forgiven by agreement. Upon information and belief this was false.

17.     Defendant had previously issued apparently false 1099-C tax forms, including in 2014.

### Refusal of Payments

18.     Thereafter, Mr. Simpson continued to struggle with his mortgage payments.

19.     Mr. Simpson applied for another modification.

3

20.     Mr. Simpson's assigned Relationship Manager from Ocwen, Walt, advised Mr. Simpson that his loan could be modified and instructed Mr. Simpson not to send in any payments, because Ocwen would just return those payments.

21.     Based on these instructions, Mr. Simpson refrained from making any payments, and sent in additional forms.

22.     Indeed, Defendant Ocwen has a policy to return payments of customers who are delinquent. This policy increases the amounts of borrower delinquencies and is contrary to West Virginia law.

23.     Defendant Ocwen has restated this policy in writing to Plaintiff, including by correspondence dated June 28, 2018, in which it stated that it would not accept any payments short of a full reinstatement if a loan is delinquent.

<u>**Improper Processing of Loan Modification**</u>

24.     Nonetheless, Defendant denied Plaintiff's application because, it stated, it was not permitted to modify his loan more than three times.

25.     If this was true, Defendant had already violated that requirement. Plaintiff's loan had previously been modified four times to increase his principal balance.

26.     Further, under the investor guidelines, Defendant is permitted to extend the term of the loan, regardless of the prior number of modifications. Defendant did not present Plaintiff with this option.

27.     Moreover, by Defendant's own statements, Defendant had never intended to modify the loan because it purportedly could not do so. Defendant's statements to Plaintiff that he had any chance of approval for a loan modification, and its instructions to cease making payments, were thus demonstrably false and caused Plaintiff to accrue greater delinquency on his loan.

4

28.     Had Plaintiff known that Defendant would not consider him for a loan modification, he would have taken other actions to avoid the accrual of additional arrears that made reinstatement impossible.

29.     Plaintiff wrote a letter to the investor identified by Defendant Ocwen, Wells Fargo, requesting reconsideration of the denial. Defendant Wells Fargo did not respond.

30.     Defendant Ocwen provided one option, which required Plaintiff to make an upfront lump sum payment of $2,000, which he could not afford.

31.     Plaintiff further wrote to Ocwen to appeal the decision, noting several errors in processing of his application.

32.     Plaintiff further advised Ocwen that on December 22, 2017, Plaintiff had called and requested the number for Defendant's escalations department, and in response, Defendant's representative Anthony laughed at Plaintiff and refused to give him the requested information.

**Failure to Properly Apply Payments, Illegal Threats & Misrepresentations of Amounts Due**

33.     On multiple occasions, Defendant Ocwen did not post Plaintiff's payments timely to his account, including, for example, his payment made in February 2017.

34.     In these circumstances, Defendant has placed payments in a suspense account. Defendant then fails to credit these payments to the total amounts due, and sends Plaintiff correspondence that misrepresents the amounts that Plaintiffs owes to Defendant. For example, Defendant overstated the amount owed in the March 2017 billing statement.

35.     On multiple occasions throughout the servicing of the loan, Defendant refused Plaintiff's payments unless he was able to fully reinstate the loan, including in writing in various communications with Plaintiff.

36.     This is consistent with Defendant's policy of refusing payments after a borrower becomes delinquent. This policy leads to substantial increased defaults and makes it increasingly difficult for borrowers to reinstate their loans and save their homes from foreclosure.

37.     At times throughout the servicing of the loan, Defendant placed payments in suspense without applying them to outstanding amounts due, when this was not permissible under West Virginia law, including when the payments totaled more than a regular monthly payment.

38.     At times throughout the servicing of the loan, Defendant cashed Plaintiff's payments apparently without applying them to any amounts due on the loan.

39.     At times throughout the servicing of the loan, Defendant sent Plaintiff conflicting notices regarding the total amounts due on his account.

40.     For example, Defendant sent a billing statement dated July 17, 2017, that stated that the total amount due was $2,031.53.

41.     Defendant then sent a delinquency notice dated July 18, 2017, stating that the total amount due was $1,320.85.

42.     Further, the July 2017 billing statement reported that Mr. Simpson's July payment was $812.21, while the July 2017 delinquency notice stated that the July payment was $507.63.

43.     In its June 28, 2018, correspondence, Defendant stated that the unpaid principal balance on the loan was $85,962.37.

44.     However, by correspondence dated June 18, 2018, Defendant stated that the unpaid principal balance on the loan was $124,642.44.

45.     These statements were contradictory and confusing.

46.     Over the course of servicing the loan, Defendant has misrepresented amounts due, including misrepresenting the amount necessary to reinstate the loan.

6

47.     Over the course of servicing the loan, Defendant has misrepresented that it may assess default and attorney fees to the account that are not authorized by the contract or applicable law.

48.     Defendant further notes the account as carrying a late fee balance, but does not provide any substantiation of why or when this fee was assessed.

49.     Defendant's communications are confusing, misleading, and deceptive.

**Cure Notices & Failure to Provide Documentation**

50.     Plaintiff sent Defendant several notices of its right to cure its legal errors, consistent with West Virginia law.

51.     In this letters, Plaintiff further advised Defendant of its improper servicing of the account and requested documentation related to the loan servicing.

52.     While Defendant provided some documentation, it did not offer to cure its legal violations or otherwise rectify its conduct.

53.     Defendant further failed to provide the complete records requested by Plaintiff on several occasions, including withholding basic information regarding the loan, including servicing notes, claiming that such information was "confidential, proprietary or privileged," or, at other points, stating only that "it is used for internal purposes only."

54.     Defendant's conduct was not consistent with commercially reasonable business practices, as set forth in applicable legal requirements, binding consent orders, and other indications of industry standards.

55.     Plaintiff has been damaged as the result of Defendants' conduct.

7

## CLAIMS FOR RELIEF

## COUNT I – MISREPRESENTATIONS

56.   Plaintiff incorporates the preceding paragraphs by reference.

57.   Defendants have used fraudulent, deceptive or misleading representations or means to collect or attempt to collect claims or to obtain information concerning Mr. Simpson, including but not limited to by misrepresenting amounts due on the account, misrepresenting that it was authorized to collect fees that it was not, in fact, authorized to collect, misrepresenting the ownership and authority to service the account, misrepresenting the status of the account regarding taxes, and misrepresenting the status of the account and the availability of loss mitigation assistance.

58.   Defendants' conduct violates section 46A-2-127 of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Civil penalties for each violation;

(b) Reasonable attorney fees and costs;

(c) Actual damages;

(d) Such other relief as the Court deems equitable and just.

## COUNT II – REFUSAL TO APPLY PAYMENTS

59.   Plaintiff incorporates the preceding paragraphs by reference.

60.   Defendant refused to accept or apply Plaintiff's payments in violation of section 46A-2-115 of the West Virginia Code.

61.   Defendant's actions were unconscionable in violation of section 46A-2-128 of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

8

(a)  Civil penalties for each violation;

(b)  Reasonable attorney fees and costs;

(c)  Actual damages;

(d)  Such other relief as the Court deems equitable and just.

## COUNT III – UNCONSCIONABLE DEBT COLLECTION

62.     Plaintiff incorporates the preceding paragraphs by reference.

63.      Defendants used unfair or unconscionable means to collect or attempt to collect

from Mr. Simpson, including but not limited to by asserting that fees could be assessed that were

not authorized, asserting that they had the authority to collect on the account, failing to provide

timely or accurate information regarding the availability of assistance on the account, refusing to

provide information regarding the account that it is required by law to provide; misrepresenting

tax liability on the account to the federal government; providing a loan modification with

documents that failed to properly disclose a balloon payment; and refusing to apply payments to

the account and instructing Mr. Simpson not to make payments.

64.     Defendants' conduct violated section 46A-2-128 of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)  Civil penalties for each violation;

(b)  Reasonable attorney fees and costs;

(c)  Actual damages;

(d)  Such other relief as the Court deems equitable and just.

## COUNT IV – FRAUD

65.     Plaintiff incorporates the preceding paragraphs by reference.

66.   Defendants misrepresented that they would consider Plaintiff for a loan modification or foreclosure prevention option, misrepresented that it was proper to refuse all payments other than a full reinstatement, and suppressed that Defendant was not appropriately reviewing the application or complying with commercially reasonable business practices.

67.   Defendant's representation was false, and it was knowing, reckless, and/or intentional.

68.   Defendant's misrepresentations and suppressions as described herein were material.

69.   Plaintiff reasonably relied on Defendant's misrepresentations when he forwent making payments on his loan made the modified loan payments, stopped making payments when so instructed, otherwise submitted documentation to Defendant, and did not pursue alternatives to foreclosure before significant arrears accrued.

70.   Plaintiff was damaged as the proximate result, including by the likely loss of his home.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

(a)  Actual damages;

(b)  Punitive damages;

(c)  Reasonable attorney's fees and the costs of this litigation; and

(d)  Such other relief as the Court deems equitable and just.

**COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT (Servicer)**

71.   Plaintiff incorporates the preceding paragraphs by reference.

72.   Plaintiff entered into deed of trust, by which Plaintiff was to make payments for the benefit of the lender or its successor to ensure against foreclosure.

73.    In furtherance of this agreement, and to ensure profit for the lender and protect against foreclosure for Plaintiff, the contract permits the payment agreement to be modified or altered to allow payments to be accepted.

74.    Defendant Ocwen asserts that it is servicing the lien on behalf of another entity that claims to be the true party to the contract.

75.    Defendant intentionally interfered with said contract by instructing Plaintiff not to make payments and refusing to permit Plaintiff to seek available foreclosure alternatives, to limit loss to the lender's successor.

76.    As a result of Defendant's actions, arrears accrued and the maturity date of the lien has occurred without any ability to pay the remaining balance, given that Defendant will not consider Plaintiff for loss mitigation alternatives.

77.    Due to the limited value of the home, the Lender will not be compensated by foreclosure on the home.

78.    Plaintiff as well as the loan's holder have suffered harm and damage as the direct result of Defendant's interference with the contract, including the inevitability of foreclosure.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages;

(b) Punitive damages and reasonable attorney fees and the costs of this litigation; and

(c) Such other relief as this Court deems equitable and just.


**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

11

Plaintiff,
**RICKEY SIMPSON,**
**By counsel:**


Jennifer S. Wagner (State Bar ID No. 10639)
Mountain State Justice, Inc.
325 Willey Street
Morgantown, WV 26505
Telephone:  (304) 326-0188
Facsimile:  (304) 326-0189
jennifer@msjlaw.org