**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**RICKEY SIMPSON,**

    **Plaintiff,**

**v.**             **Civ. Action No. 2:19-CV-29**
                  **(Kleeh)**

**OCWEN LOAN SERVICING, LLC,
and WELLS FARGO BANK,**

    **Defendants.**

---

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO REMAND [ECF NO. 14]**

---

Pending before the Court is a Motion to Remand filed by the Plaintiff, Rickey Simpson ("Plaintiff"). For reasons discussed herein, the Court denies the motion.

### I. PROCEDURAL HISTORY

On April 16, 2019, this action was timely removed to this Court from the Circuit Court of Lewis County, West Virginia. ECF No. 1. Plaintiff brings five (5) causes of action against the Defendants, Ocwen Loan Servicing, LLC ("Ocwen"), and Wells Fargo Bank ("Wells Fargo") (together, "Defendants"), related to allegedly abusive loan servicing. See Compl., ECF No 1-1. On April 23, 2019, Defendants filed an Answer. ECF No. 5. On July 9, 2019, Plaintiff filed this motion. ECF No. 14. It is now ripe for consideration.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [ECF NO. 14]**

## II.  GOVERNING LAW

When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" Id. (citations omitted). "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted).

Federal courts have original jurisdiction over two types of cases: those involving federal questions under 28 U.S.C. § 1331 and those involving diversity of citizenship under 28 U.S.C. § 1332. When a party seeks to remove a case based on diversity of citizenship, that party bears the burden of establishing that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states[.]" 28 U.S.C. § 1332.

When a complaint does not contain a specific amount in controversy and the defendant files a notice of removal, "the defendant bears the burden of proving that the claim meets the

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [ECF NO. 14]**

requisite jurisdictional amount," and "the Court may consider

the entire record" to determine whether that burden was met.

Elliott v. Tractor Supply Co., No. 5:14CV88, 2014 WL 4187691, at

*2 (N.D.W. Va. Aug. 21, 2014) (citing Mullins v. Harry's Mobile

Homes, Inc., 861 F.Supp. 22, 23 (S.D.W. Va. 1994)). If the

defendant sufficiently proves by a preponderance of the evidence

that the amount in controversy exceeds $75,000 and the parties

are diverse, then removal is proper. Dart Cherokee Basin

Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014).

"[A]bsent a binding stipulation signed by [the plaintiff] that

he will neither seek nor accept damages in excess of $75,000,

the Court must independently assess whether the defendant[]

ha[s] proven by a preponderance of the evidence that

[the] . . . complaint seeks damages in excess of $75,000."

Virden v. Altria Group, Inc., 304 F. Supp. 2d 832, 847 (N.D.W.

Va. 2004).

### III. THE COMPLAINT

The Complaint alleges abusive loan servicing by Defendants.

Plaintiff argues that "Defendants regularly misstated the status

of the account, misrepresented that it was permitted to return

Plaintiff's payments and instructed Plaintiff not to make

payments, and otherwise interfered with Plaintiff's performance

on the loan." Compl., ECF No. 1-1, at 1. Ocwen is the servicer

of the subject loan. Id. ¶ 2. Wells Fargo is the trustee for the holder of the subject loan. Id. ¶ 3.

On or around March 4, 2005, Plaintiff was placed into an adjustable rate mortgage by H&R Block Mortgage Corporation ("H&R Block") in the amount of $108,000.00. Id. ¶ 4. Plaintiff argues that Ocwen does not have authority to service the loan because it has no chain of title transferring the loan from H&R Block to Option One and/or from Option One to any subsequent holder. Id. ¶ 8.

Plaintiff asserts that an illegal balloon exists and raises issues regarding refusal of payments. He struggled with loan payments and applied for another modification. Id. ¶¶ 11-19. Ocwen advised Plaintiff that his loan could be modified and instructed Plaintiff not to send in any payments because Ocwen would just return them. Id. ¶ 20. Based on these instructions, Plaintiff refrained from making any payments and sent in additional forms. Id. ¶ 21. Plaintiff alleges that Ocwen has a policy to return payments of customers who are delinquent. Id. ¶ 22. This is, Plaintiff argues, contrary to West Virginia law and increases the amount of borrower delinquencies. Id. On June 28, 2018, Ocwen told Plaintiff that it would not accept any payments short of a full reinstatement if a loan is delinquent. Id. ¶ 23.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [ECF NO. 14]**

Plaintiff alleges that Ocwen denied plaintiff's application, the stated reason being that Plaintiff was not permitted to modify his loan more than three times. Id. ¶ 24. Plaintiff also cites facts concerning Ocwen's failure to apply payments to Plaintiff's account, illegal threats, and misrepresentations of amounts due.

Plaintiff sent Ocwen several notices of its right to cure its legal errors, advising Ocwen of its improper servicing and requesting related documentation. Id. ¶¶ 50, 51. Ocwen did not offer to cure or rectify its conduct, and it did not provide the requested documentation. Id. ¶¶ 52, 53. Plaintiff argues that Ocwen's conduct was not consistent with commercially reasonable business practices, as set forth in applicable legal requirements, binding consent orders, and other indications of industry standards. Id. ¶ 54. Plaintiff argues that he has been damaged.

Plaintiff asserts the following causes of action:

> (I)    Misrepresentation, in violation of section 46A-2-127 of the West Virginia Code;[1]

---

[1] For this Count, Plaintiff seeks (a) civil penalties for each violation, (b) reasonable attorney fees and costs, (c) actual damages, and (d) such other relief as the Court deems equitable and just.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [ECF NO. 14]**

---

  (II)  Refusal to Apply Payments, in
violation of sections 46A-2-115 and
46A-2-128 of the West Virginia Code;[2]

  (III) Unconscionable Debt Collection, in
violation of section 46A-2-128 of the
West Virginia Code;[3]

  (IV) Fraud;[4] and

  (V)  Tortious Interference with Contract
(Servicer).[5]

## IV. DISCUSSION

  The Court finds that Defendants have demonstrated certainly
by a preponderance of the evidence and perhaps even more that
over \$75,000 is at issue. Under section 46A-5-101(1) of the West
Virginia Code, if a creditor or debt collector violates the
provisions of that chapter, the consumer has the right to
recover a penalty of \$1,000 per violation. Plaintiff alleged in

---

[2] For this Count, Plaintiff seeks (a) civil penalties for each
violation, (b) reasonable attorney fees and costs, (c) actual
damages, and (d) such other relief as the Court deems equitable
and just.

[3] For this Count, Plaintiff seeks (a) civil penalties for each
violation, (b) reasonable attorney fees and costs, (c) actual
damages, and (d) such other relief as the Court deems equitable
and just.

[4] For this Count, Plaintiff seeks (a) actual damages, (b)
punitive damages, (c) reasonable attorney's fees and costs of
this litigation, and (d) such other relief as the Court deems
equitable and just.

[5] For this Count, Plaintiff seeks (a) actual damages, (b)
punitive damages and reasonable attorney fees and the costs of
this litigation, and (c) such other relief as this Court deems
equitable and just.

his Complaint that Ocwen does not have the authority to service

the loan. See Compl., ECF No. 1-1, at ¶ 8. Under this theory,

Ocwen would have been "misrepresenting the ownership and

authority to service the account," in violation of section 46A-

2-127 of the West Virginia Code. Every attempted collection by

Ocwen would be a violation of the West Virginia Consumer Credit

and Protection Act ("WVCCPA") and potentially create $1,000.00

in statutory damages. Adjusted for inflation, each attempted

collection would be valued, for purposes of damages, at

$1,080.69. As Ocwen points out, there were 72 monthly billing

statements[6] from March 2013 to April 2019, which creates an

amount in controversy of at least $72,000 — and $77,809.68 when

adjusted for inflation. Plaintiff alleges other statutory

violations as well: placement of payments in "suspense

account[s]," and "send[ing] Plaintiff correspondence that

---

[6] In his Motion for Remand, Plaintiff argued that Defendants had failed to produce evidence of these billing statements. See ECF No. 20 at 9 (writing that Defendants "do not include the dates of these statements or any record that would establish the accuracy of this number, nor do Defendants provide any evidence that establishes why each of these monthly billing statements would be alleged as violations of the WVCCP by Plaintiff"). Ocwen attached the billing statements to its Response. As discussed above, the Court may consider the entire record in determining the amount in controversy. See Elliott, 2014 WL 4187691, at *2.

misrepresents the amounts that Plaintiff[] owes to Defendant."
Compl., ECF No. 1-1, at ¶ 34.

Plaintiff's claim for Fraud at Count IV and Tortious
Interference at Count V and his pursuit of punitive damages for
each warrants additional discussion. "A good faith claim for
punitive damages may augment compensatory damages in determining
the amount in controversy unless it can be said to a legal
certainty that plaintiff cannot recover punitive damages in the
action." Hicks v. Herbert, 122 F. Supp. 2d 699, 701 (S.D.W. Va.
2000) (citation omitted). West Virginia law permits recovery of
punitive damages where clear and convincing evidence
demonstrates "the defendant [acted] with actual malice toward
the plaintiff or a conscious, reckless and outrageous
indifference to the health, safety and welfare of others." W.
Va. Code § 55-7-29(a). The West Virginia Legislature has limited
the recovery of punitive damage awards within the state – "[t]he
amount of punitive damages that may be awarded in a civil action
may not exceed the greater of four times the amount of
compensatory damages or $500,000, whichever is greater." Id.
Despite these caps, a request for punitive damages certainly
looms large in assessing whether the jurisdictional amount in
controversy is satisfied. "[A] request for punitive damages,
where properly recoverable, inevitably inflates a plaintiff's

potential recovery." Bryant v. Wal-Mart Stores E., Inc., 117 F.
Supp. 2d 555, 556 (S.D.W. Va. 2000). Punitive damages are an
available element of recovery in actions for fraud. See, e.g.,
Kessell v. Leavitt, 511 S.E.2d 720 (W. Va. 1998) (affirming
award of punitive damages on fraud claim). West Virginia has
likewise affirmed punitive damages awards for tort claims
alleging intentional interference with business relationships.
See, e.g., C.W. Dev., Inc. v. Structures, Inc. of W. Va., 408
S.E.2d 41, 45 (W. Va. 1991). Thus, punitive damages appear
"properly recoverable" based on the allegations in the Complaint
and, therefore, must be considered at this stage.

Defendants also point to a prior settlement demand in
support of its assertion the amount in controversy is satisfied
here. With leave of court, Defendants submitted, under seal, an
email from Plaintiff's counsel outlining a settlement demand.
This Court has previously found settlement discussions germane
to the issue present here. See Gillis v. Bayview Loan Servicing,
LLC, No. 2:18-CV-57, 2018 WL 4183255 (N.D.W. Va. Aug. 15, 2018);
see also Grinell Mut. Reinsurance Co. v. Haight, 697 F.3d 582,
585 (7th Cir. 2012) ("Although settlement negotiations are not
admissible at trial pursuant to Federal Rule of Evidence 408 to
prove liability for or invalidity of the claim or its amount,

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [ECF NO. 14]**

they can be considered 'to show the stakes' when determining whether the amount in controversy is met.").

Plaintiff, in his Motion to Remand, claims he does not seek discharge of the loan in question. However, the very first term demanded in Plaintiff's settlement correspondence was "paying off the balance of the loan." ECF No. 40-1 at 7. The relevant documents demonstrating the monetary value of that proposed settlement term were submitted under seal [ECF No. 4-1 at 9-12] and the Court will not repeat them here. However, it is abundantly clear that the value of "paying off the loan" is more than sufficient to satisfy the amount in controversy here before consideration of other terms of the settlement proposal or other damages recoverable. The settlement demand went on to request attorney fees incurred to date (approximately $36,000) and payment of cash to "cover" the tax consequences of satisfaction of the loan [ECF No. 4-1 at 7]. Simply put, the "stakes" are well in excess of the $75,000 threshold whether the possible recovery under the WVCCPA or the settlement proposal is considered.

Taking into account the $77,809.68 in potential statutory damages discussed above, in addition to the numerous other

alleged statutory violations, the claim for attorney's fees,[7] the

claim for actual damages, the claim for punitive damages, and

the sealed information at ECF No. 40-1 at 7, the record leaves

no doubt that over $75,000.00 is in dispute in this case. If

Plaintiff found federal jurisdiction so abhorrent, he could have

easily avoided it. A simple stipulation in the Complaint that he

was seeking less than and would not accept more than $75,000

would, of course, suffice. Plaintiff possibly could have filed a

post-removal stipulation "clarifying" the ambiguity of the

amount sought. See, e.g., Stanley v. Auto-Owners Ins. Co., No.

3:19-cv-02264-JMC, 2019 WL 5303726, at *2 (D.S.C. Oct. 21, 2019)

(noting that a post-removal clarification of an ambiguous

complaint as opposed to a formal amendment may be considered in

---

[7] Without estimating a specific amount, the Court finds that attorney's fees may be considered when determining the amount in controversy. See Barnikowski v. NVR, INC., 307 F. App'x 730, 736 n.12 (4th Cir. 2009) (writing that when a "statute provides for the recovery of attorneys' fees as a substantive right, they are properly includable in the amount in controversy estimate"). Attorney fees are recoverable under the WVCCPA. See W. Va. Code § 46A-5-104 ("In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer. On a finding by the court that a claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court may award to the defendant reasonable attorney fees.").

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [ECF NO. 14]**

assessing the amount in controversy only if the jurisdictional question was unclear at the time of removal). He did neither. Instead, a settlement proposal was made post-removal which clearly satisfied the amount in controversy even though the Complaint itself left little question. After applying common sense and reviewing the entire record, the Court finds that Defendants have met their burden, and the Motion to Remand is denied.

## V.   CONCLUSION

For the reasons discussed above, the Motion to Remand is **DENIED** [ECF No. 14].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 9, 2020

_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE